UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | | |
|---|---|---|---|
| STEPHEN B. WLODARZ, | ) | | |
| Plaintiff, | ) ) ) | | |
| v. | ) ) | No.: | 3:20-CV-199-PLR-DCP |
| CENTURION OF TENNESSEE, LLC, et al., | ) ) ) ) | | |
| Defendants. | ) | | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, a prisoner housed at the Morgan County Correctional Complex ("MCCX"), has filed an amended complaint in this pro se prisoner's civil rights action, which alleges a delay and denial of medical treatment [Doc. 15]. Plaintiff's previous attempt to file an amended complaint [*see* Doc. 11] was denied without prejudice after the Court found that the amended complaint failed to comport with Rule 8 of the Federal Rules of Civil Procedure [Doc. 14]. Plaintiff was allowed twenty-one days from entry of that order to file an amended complaint containing "only a short and plain statement of each claim showing that he is entitled to relief as to each Defendant" [*Id.* at 2]. Plaintiff's amended complaint is now before the Court for screening pursuant to the Prison Litigation Reform Act ("PLRA").

**I. SCREENING STANDARD**

Under the PLRA, district courts must screen prisoner complaints and shall, at any time, *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A]

because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. *Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) (stating that "Section 1983 . . . creates a right of action for the vindication of constitutional guarantees found elsewhere").

## II.  ALLEGATIONS OF THE AMENDED COMPLAINT

Dr. Lucas Burton, a Nashville hip surgeon, performed a hip resection on Plaintiff on June 26, 2015 [Doc. 15 p. 7]. On July 16, 2015, Plaintiff was again evaluated by Dr. Burton, who assured Plaintiff he would receive a total replacement of his left hip [*Id*. at 7-8]. Plaintiff was thereafter transported back to DeBerry Special Needs Facility ("DSNF") and housed in the hospital section of the facility to wait for the surgery to be scheduled [*Id*. at 8]. Plaintiff was advised several times by DSNF medical staff that Plaintiff's consultations had been submitted to Centurion, the healthcare provider for Tennessee Department of Correction ("TDOC"), for processing [*Id*.].

Plaintiff was allowed to view his TDOC medical records on March 8, 2016, and he observed in those records a notation by DSNF physicians that a hip replacement had been recommended by an orthopedic surgeon in July 2015 [*Id*.]. On April 12, 2016, Plaintiff was transported from DSNF to MCCX [*Id*.]. Plaintiff's medical file contained written instructions to MCCX medical staff that Plaintiff was to receive a follow up with his orthopedic surgeon as soon

as the appointment could be scheduled [*Id.*]. On May 13, 2016, Plaintiff was approved for a follow up orthopedic appointment [*Id.*].

On May 16, 2016, Dr. Edmund Lane, an MCCX physician, sent Plaintiff to the hospital's clinic for hip x-rays [*Id.*]. After viewing the results, the technician "reassured" Plaintiff that she expected Plaintiff to receive his hip replacement surgery [*Id.* at 9]. On June 7, 2016, Plaintiff submitted blood and urine samples requested by Dr. Lane [*Id.*].

Over a year later, on September 7, 2017, Dr. Lane placed a telephone call to inquire about the delay in scheduling Plaintiff's surgery [*Id.*]. At the same time, Dr. Lane sent Plaintiff to receive another hip x-ray, which showed that the length of Plaintiff's left leg had decreased [*Id.*]. On October 9, 2017, Plaintiff was returned to the clinic, where Dr. Lane advised Plaintiff that the x-ray results did not "look good" [*Id.*]. Dr. Lane failed to give Plaintiff any further explanation or medical advice, other than offering to prescribe Plaintiff analgesics [*Id.*]. The same date, Plaintiff signed medical release forms for the Nashville Bone and Joint Center, along with surgical release forms [*Id.*].

On October 12, 2017, Plaintiff was transferred from MCCX to DSNF to await surgery [*Id.*]. On October 16, 2017, DSNF transportation officers transported Plaintiff to Tri-Star Centennial Medical Center, where Plaintiff apparently had no appointment, and the officers were advised that the facility no longer accepted TDOC patients [*Id.* at 9-10]. Plaintiff mentioned Nashville Bone and Joint Center to the officers, but the officers "refused Plaintiff's inquiry" and transported Plaintiff back to DSNF [*Id.* at 10]. Back at DSNF, Plaintiff saw the list of appointments for October 16, 2017, and noticed his name next to an appointment at Saint Thomas Ortho [*Id.* at 10]. Plaintiff requested a copy of that list and was denied [*Id.*]. Plaintiff submitted an inmate inquiry

3

about his appointment later that evening to Dr. Chester, TDOC's medical director at DSNF, but he received no response [*Id*.].

On October 17, 2017, Plaintiff submitted a grievance concerning the missed appointment, and on October 25, 2017, Plaintiff was returned to MCCX without a response to his grievance [*Id*. at 11]. On November 1, 2017, Plaintiff asked Dr. Lane to reschedule his surgical appointment [*Id*.]. On November 29, 2017, Plaintiff was permitted to view his medical record, which contained references to the missed appointment and a notation that MCCX was to reschedule the appointment [*Id*.]. Throughout November and December of 2017, Plaintiff pursued inquiries about the missed surgical appointment through the grievance process to the MCCX warden, with copies sent to the DSNF warden and TDOC Commissioner Tony Parker, but he obtained no useful information [*Id*.].

Plaintiff's prescriptions for analgesics and a wheelchair continued [*Id*.]. On November 6, 2018, Dr. Lane submitted a request for Plaintiff to receive hip replacement surgery [*Id*. at 12]. On January 8, 2019, Plaintiff met with Dr. Jason Brashear, an orthopedic surgeon [*Id*.]. However, Dr. Brashear declined to perform the surgery and advised Plaintiff that he should be referred to a university hospital or the surgeon that performed the initial re-sectioning [*Id*.].

On February 14, 2019, Dr. Lane advised Plaintiff that he would not make any further appointments for Plaintiff due to "pockets of abscesses" and "atrophy" in Plaintiff's hip area [*Id*.]. He did not prescribe antibiotics or therapy to minimize atrophy progression [*Id*.].

On February 19, 2019, Plaintiff submitted another grievance regarding his need for surgery, alleging that failure to treat him constituted a denial of access to health care under TDOC policy [*Id*. 12-13]. The grievance response, by Dr. Lane's supervisor, stated that Dr. Lane had determined that "the risk factors of the girdlestone procedure outweigh the benefits of positive outcomes of the procedure" [*Id*. at 13]. On March 18, 2019, Dr. Lane advised Plaintiff that the risk of anesthesia

4

was too great to allow the hip surgery [*Id*. at 13-14]. On April 11, 2019, TDOC Acting Assistant Commissioner of Prisons, "Les" John Doe signed a document noting that the Director of Health Services reviewed had reviewed Plaintiff's grievance and agreed with Dr. Lane's supervisor [*Id*. at 13, 30].

Plaintiff's annual review of his medical chart on January 17, 2020, revealed Dr. Brashear's assessment plan, which stated that he did not believe "an overall good outcome" would occur if he performed the surgery [*Id*. at 14]. The assessment also contained a notation that Plaintiff had been a smoker since age 50, which Plaintiff contends is incorrect [*Id*.]. Plaintiff also reviewed a February 14, 2019, report created by Dr. Lane, which found that Plaintiff, then 67 years-old, "faces the possibility of pulm[on]ary arrest, paralysis[,] and death if he undergoes this surgery" [*Id*.]. The report further noted that Plaintiff was able to walk with an assisted device, and that "[t]he benefit from a complex surgery would probably serve minor improvement" [*Id*.].

On March 25, 2020, Dr. Lane performed a physical examination of Plaintiff that showed Plaintiff healthy and with no abscesses or infections [*Id*.]. Nonetheless, Plaintiff claims, Dr. Lane offered no hope of a follow-up surgery [*Id*.]. Plaintiff seeks monetary compensation and declaratory relief for the alleged delay and/denial of a medically necessary surgery [*Id*. at 18].

### III. ANALYSIS

Summonses have already issued in this case against Centurion and Edmund Lane [*See* Doc. 13]. In the instant amended complaint, Plaintiff also seeks to add the following Defendants to this lawsuit: TDOC Medical Director, Kenneth Williams; DSNF Medical Director, Dr. Chester; Health Services Administrator, RN Lynda Fagan; TDOC Commissioner, Tony Parker; Acting Assistant Commissioner, "Les" John Doe [Doc. 15].

5

The Court finds that Plaintiff cannot maintain this § 1983 action against Defendants TDOC Commissioner Tony Parker or Acting Assistant TDOC Commissioner "Les" John Doe. Plaintiff alleges that these Defendants, failed to follow TDOC policy by ensuring he received adequate health care [*Id*. at 17]. However, § 1983 is not concerned with whether an individual has violated State institutional policy; it exists to provide reparations for the violation of constitutional rights. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982) (noting claims under § 1983 can only be brought for "deprivation of rights secured by the Constitution and laws of the United States").

Second, the Court finds that Plaintiff has not alleged that Defendants Parker or Doe had any involvement in the decision whether Plaintiff received medical care, and therefore, he has failed to state a claim against either of these Defendants. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted); *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (finding that knowledge of a prisoner's grievance and a failure to respond or remedy the complaint was insufficient to impose liability on supervisory personnel under § 1983). Accordingly, Defendants Parker and Doe will be **DISMISSED** from this action.[1] Plaintiff's claims for the denial and/or delay of medical care will **PROCEED** as to the remaining Defendants.

## IV. CONCLUSION

For the reasons set forth above:

1. Plaintiff's claim that Defendants Centurion, Lane, Williams, Chester, and Fagan denied and/or delayed him necessary medical care shall **PROCEED**;

---

[1] The Court otherwise notes that the Eleventh Amendment prohibits the award of monetary damages against Tennessee officials in their official capacities. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Berndt v. State of Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986) (noting that Tennessee has not waived immunity to suits under § 1983). Accordingly, Plaintiff cannot obtain monetary compensation against Tennessee employees sued in their official capacities.

6

2. The Clerk is hereby **DIRECTED** to send Plaintiff service packets (a blank summons and USM 285 form) for Defendants Williams, Chester, and Fagan;

3. Plaintiff is **ORDERED** to complete the service packets and return them to the Clerk's Office within thirty (30) days of entry of this memorandum and order. At that time, the summonses will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service pursuant to Fed. R. Civ. P. 4;

4. Plaintiff is **NOTIFIED** that failure to return the completed service packets within the time required will result in dismissal of this action for want of prosecution and/or failure to follow Court orders;

5. Defendants shall answer or otherwise respond to the complaint within twenty-one (21) days from the date of service. If any Defendant fails to timely respond to the complaint, any such failure may result in entry of judgment by default;

6. Defendants Tony Parker and John Doe are **DISMISSED**; and

7. Plaintiff is **ORDERED** to immediately inform the Court and Defendants or their counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen days of any change in address may result in the dismissal of this action.

**SO ORDERED**.

**ENTER:**

_____
**CHIEF UNITED STATES DISTRICT JUDGE**