UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| STEPHEN B. WLODARZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.: 3:20-CV-199-RLJ-DCP |
| ) | |
| CENTURION OF TENNESSEE, LLC, et al., ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM OPINION

Defendant Edmund Lane has filed a motion seeking to be dismissed from this pro se prisoner's civil rights action for violation of 42 U.S.C. §1983 [Doc. 53]. Plaintiff has filed a response in opposition to the motion [Doc. 56], and Defendant Lane has filed a reply thereto [Doc. 57]. Having fully considered the parties' arguments and the applicable law, the Court finds that Defendant's motion should be granted.

### I. PLAINTIFF'S RELEVANT ALLEGATIONS

Dr. Lucas Burton, a Nashville hip surgeon, performed a hip resection on Plaintiff on June 26, 2015, so that Plaintiff might later receive a hip replacement [Doc. 15 p. 7]. On July 16, 2015, Plaintiff was again evaluated by Dr. Burton, who reassured Plaintiff he would receive a hip replacement [*Id*. at 7-8]. Plaintiff was thereafter transported back to DeBerry Special Needs Facility ("DSNF") to wait for the surgery to be scheduled [*Id.*]. Plaintiff was advised several times by DSNF medical staff that Plaintiff's consultations had been submitted to Centurion, the healthcare provider for Tennessee Department of Correction ("TDOC"), for processing [*Id*. at 8].

Plaintiff was allowed to view his TDOC medical records on March 8, 2016, in which he observed a notation by DSNF physicians that a hip replacement had been recommended by an

orthopedic surgeon in July 2015 [*Id.* at 8]. On April 15, 2016, Plaintiff was transported from DSNF to the Morgan County Correctional Complex ("MCCX") [*Id.*]. Plaintiff's medical file contained written instructions to MCCX medical staff that Plaintiff was to receive a follow up with his orthopedic surgeon as soon as the appointment could be scheduled [*Id.*]. On May 13, 2016, Plaintiff was approved for a follow up orthopedic appointment [*Id.*].

On May 16, 2016, Dr. Edmund Lane, an MCCX physician, sent Plaintiff to the hospital's clinic for hip x-rays [*Id.* at 8-9]. After viewing the results, the technician "reassured" Plaintiff that a patient would not be "left to remain in such a condition" [*Id.* at 9]. On June 7, 2016, Plaintiff submitted blood and urine samples requested by Dr. Lane [*Id.*].

Over a year later, on September 7, 2017, Dr. Lane placed a telephone call to a medical consultant (of an unknown identity to Plaintiff) to inquire about the delay in scheduling Plaintiff's surgery [*Id.* at 9]. Dr. Lane sent Plaintiff to receive another hip x-ray, which showed that the length of Plaintiff's left leg had decreased [*Id.*]. On October 9, 2017, Plaintiff was returned to the clinic, where Dr. Lane advised Plaintiff that the x-ray results did not "look good" [*Id.*]. Dr. Lane failed to give Plaintiff any further explanation or medical advice, other than offering to prescribe Plaintiff analgesics [*Id.*]. A few days later, Plaintiff signed medical release forms for the Nashville Bone and Joint Center and surgical release forms [*Id.*].

On October 12, 2017, Plaintiff was transferred from MCCX to DSNF [*Id.*]. On October 16, 2017, DSNF transportation officers transported Plaintiff to Tri-Star Centennial Medical Center, where Plaintiff apparently had no appointment, and where the officers were advised that the facility no longer accepted TDOC patients [*Id.* at 9-10]. Plaintiff mentioned Nashville Bone and Joint Center to the officers, but the officers "refused Plaintiff's questions" and transported Plaintiff back to DSNF [*Id.* at 10]. Back at DSNF, Plaintiff saw the list of appointments for October 16, 2017,

2

and noticed his name next to an appointment at Saint Thomas Ortho [*Id*.]. Plaintiff requested a copy of that list and was denied [*Id*.]. Plaintiff submitted an inmate inquiry about his missed appointment later that evening, but he received no response [*Id*.].

On October 17, 2017, Plaintiff submitted a grievance concerning the missed appointment, and on October 25, 2017, Plaintiff was returned to MCCX without a response to his grievance [*Id*. at 10-11]. On November 1, 2017, Plaintiff, whose pain had increased, asked Dr. Lane to reschedule his surgical appointment [*Id*. at 11]. On November 29, 2017, Plaintiff was permitted to view his medical record, which contained references to the missed appointment and a notation that MCCX was to reschedule the appointment [*Id*.]. Throughout November and December of 2017, Plaintiff continued receiving his wheelchair and ibuprofen prescriptions, but he never received any information about the missed surgical appointment [*Id*.]

On January 8, 2019, Plaintiff met with a Johnson City hip surgeon, Dr. Jason Brashear, to discuss total hip replacement [*Id*. at 12]. However, Dr. Brashear ultimately declined to perform the surgery [*Id*.]. Plaintiff's review of his medical chart on January 17, 2020, revealed Dr. Brashear's assessment plan, which stated that he had not recommended surgery because the surgery was complex, and Plaintiff, a non-smoker, had "smoked since age 50" [*Id*. at 14].

On February 14, 2019, Dr. Lane advised Plaintiff that he would not make any further appointments for Plaintiff due to "pockets of abscesses" and "atrophy" in Plaintiff's hip area [*Id*.]. He did not prescribe antibiotics or therapy to minimize atrophy progression [*Id*.]. Dr. Lane's report from that visit states that Plaintiff, then 67 years-old, "faces the possibility of pulm[on]ary arrest, paralysis[,] and death if he undergoes this surgery" [*Id*. at 14]. The report further noted that Plaintiff was able to walk with an assisted device, and that "[t]he benefit from a complex surgery would probably serve minor improvement" [*Id*.].

3

On February 19, 2019, Plaintiff submitted another grievance regarding his need for surgery [*Id*. at 12-13]. In response to that grievance, Plaintiff was advised that Dr. Lane had determined "the risk factors" of the procedure "outweigh the benefits of positive outcomes" [*Id*. at 13]. On March 18, 2019, Dr. Lane advised Plaintiff that the risk of anesthesia was too great to allow the hip surgery [*Id*. at 13-14].

On March 25, 2020, Dr. Lane performed a physical examination of Plaintiff that showed Plaintiff healthy and with no abscesses or infections [*Id*. at 14]. Nonetheless, Dr. Lane offered no hope of a follow-up surgery [*Id.*].

On or about April 6, 2020, Plaintiff filed this action (as later amended) alleging Defendants' deliberate indifference to Plaintiff's need for the follow up hip replacement surgery first prescribed in 2015 [*See, generally,* Doc. 15]. As to Dr. Lane specifically, Plaintiff alleges that he "acted with deliberate indifference when he told Plaintiff that he will not be making appointments for Plaintiff to see doctors, i.e., consults to schedule an appointment" with any hip surgeons [*Id*. at 16].[1]

## II. MOTION TO DISMISS STANDARD

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim for relief is plausible on its face "when the plaintiff pleads

---

[1] In his response in opposition to Defendant Lane's motion for summary judgment, Plaintiff asserts that Dr. Lane demonstrated deliberate indifference in failing to prescribe antibiotics or therapy to minimize atrophy [Doc. 56]. While Plaintiff's complaint stated the fact that Dr. Lane did not prescribe antibiotics or therapy in response to his abscesses, his specific complaint against Dr. Lane was that he refused to seek further appointments for a hip replacement [Doc. 15 p. 16]. Plaintiff cannot raise a new claim in response to a motion for summary judgment, and the Court will not entertain this claim. *See, e.g., Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007) (holding party may not seek to expand claims or assert new theories in response to summary judgment motion).

4

Case 3:20-cv-00199-RLJ-DCP   Document 58   Filed 12/21/20   Page 4 of 7   PageID #: 427

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A claim for relief is implausible on its face when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* at 679. When considering a plaintiff's claims, all factual allegations in the complaint must be taken as true. *See, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). However, the Supreme Court has cautioned:

> Determining whether a complaint states a plausible claim for relief will. . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"- "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Iqbal*, 556 U.S. at 679 (internal citations omitted).

Additionally, while Plaintiff's claim survived a frivolity review upon initial screening under the Prison Litigation Reform Act ("PLRA"), the standard for a Rule 12(b)(6) motion is a higher bar than the frivolity standard in 28 U.S.C. § 1915. *See, e.g, Leach v. Corr. Corp. of Am.*, No. 3:16-CV-2876, 2017 WL 35861, at *3 (M.D. Tenn. Jan. 4, 2017) (stating the required screening of a plaintiff's complaint under the PLRA is "a lower burden for the plaintiff to overcome in order for his claims to proceed" than a motion to dismiss under Rule 12(b)(6)). It is with these standards in mind that the Court considers the Defendant's motion.

### III. DISCUSSION

Plaintiff's claim against Defendant Lane is based on the Eighth Amendment's prohibition against cruel and unusual punishment, which "forbids prison officials from unnecessarily and wantonly inflicting pain on an inmate by acting with deliberate indifference toward [his] serious medical needs." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)) (internal quotation marks omitted).

An Eighth Amendment claim for the denial of adequate medical treatment is composed of two parts: (1) an objective component, which requires a plaintiff to show a "sufficiently serious" medical need; and (2) a subjective component, which requires the plaintiff to show the defendants acted with "deliberate indifference" to that need. *Farmer v. Brennan*, 511 U.S. 825, 834, 842 (1994). This subjective state of deliberate indifference requires a plaintiff to show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Where some medical treatment has been provided however, the fact that a prisoner might disagree with the adequacy of care given does not implicate the Constitution. *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1996). This is because "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Id.* Thus, differences in the opinions of inmates and medical personnel regarding the appropriate treatment, even where the prisoner is ultimately misdiagnosed and therefore inadequately treated, is not enough to state a claim of deliberate indifference. *See, e.g., Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997). Accordingly, negligence by a defendant is insufficient to establish liability; deliberate indifference requires a mental state amounting to criminal recklessness. *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 834, 839-40).

With these standards in mind, the Court finds that Plaintiff has failed to state a cognizable claim of deliberate indifference against Defendant Lane. While Plaintiff maintains that Dr. Lane's culpable mental state is evidenced by his failure to make further appointments, Plaintiff also states that the decision to forego surgery occurred on February 14, 2019, following his appointment with Dr. Brashear [Doc. 15 p. 12, 14]. Plaintiff's allegations admit that Plaintiff was evaluated by Dr.

6

Brashear and was determined to be a poor candidate for surgical intervention due to his age and the probability of only marginal improvement if the surgery were to be conducted. The fact that Plaintiff disagrees with Dr. Brashear's surgical assessment does not render Dr. Lane deliberately indifferent for heeding it.

Further, Plaintiff does not deny that he did not receive treatment from Dr. Lane, and in fact, Plaintiff's complaint reveals an extensive history of medical examination, evaluation, consultation, and treatment by Dr. Lane. For instance, Plaintiff was given a wheelchair for mobility and analgesics for pain, he was routinely evaluated and x-rayed, and Plaintiff's recitation of his medical file demonstrates Dr. Lane's numerous attempts to obtain treatment for a condition that was apparently very difficult to treat. Plaintiff's allegations, on the contrary, amount to a disagreement with Dr. Lane's course of treatment. Such disagreement does not state a claim for deliberate indifference to a serious medical need, and Dr. Lane is entitled to dismissal.

## IV.   CONCLUSION

For the reasons set forth above, Defendant Lane's motion to dismiss [Doc. 53] will be **GRANTED**, and he will be **DISMISSED WITH PREJUDICE** from this action.

**AN APPROPRIATE ORDER WILL ENTER**.

ENTER:

s/ Leon Jordan
United States District Judge